**FILED**

**JUL 2 0 2012**



CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| TIM LORS, acting in his own capacity, | * | CIV 10-3024-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| JIM DEAN, acting in his official capacity; | * | OPINION AND ORDER |
| DEB DUFOUR, acting in her official and | * | GRANTING DEFENDANTS' |
| individual capacities; KIM STAHL, acting | * | MOTION FOR SUMMARY |
| in her official and individual capacities; | * | JUDGMENT |
| OTTO DOLL, acting in his official and | * | |
| individual capacities; BUREAU OF | * | |
| TELECOMMUNICATIONS, THE | * | |
| STATE OF SOUTH DAKOTA; | * | |
| ATTORNEY GENERAL: MARTY | * | |
| JACKLEY; and GOVERNOR: | * | |
| MICHAEL ROUNDS, | * | |
| | * | |
| Defendants. | * | |

Tim Lors, acting pro se, sued Defendants Jim Dean, Deb Dufour, Kim Stahl, and Otto Doll, both personally and as employees of the Bureau of Telecommunications of the State of South Dakota, as well as South Dakota Attorney General Marty Jackley, and then-South Dakota Governor Michael Rounds. Doc. 1. Lors alleged that the Defendants had terminated him from his employment with the State of South Dakota in violation of Title VII of the Civil Rights Act of 1964 and as a consequence of Lors having filed a prior civil suit charging some of the same defendants with unlawful discrimination. Id. The Defendants denied any alleged violation of Lors's civil rights and moved for summary judgment. Doc. 6; Doc. 13. Lors hired counsel during the time the motion for summary judgment was pending. This Court allowed Lors's counsel additional briefing and thereafter held a hearing on Defendants' Motion for Summary Judgment. Doc. 43; Doc. 45; Doc. 54. This Court for the reasons explained in this Opinion and Order now grants summary judgment to the Defendants.

**I. Undisputed Material Facts**

This Court takes the facts primarily from Plaintiff's Supplemental Responsive Statement of Material Facts, Doc. 48, because, on summary judgment, this Court views the facts in the light most

favorable to the non-movant, Tim Lors. This Court also draws the facts from Plaintiff's Supplemental Statement of Material Facts, Doc. 47, Lors's pro se filing regarding the facts, Doc. 16, and other materials of record not in genuine dispute.

Lors was employed by the South Dakota Bureau of Information and Technology ("BIT") from 1996 until April 23, 2009. Doc. 48 at ¶ 1. BIT provides telecommunication related information technology services for agencies of the South Dakota state government. Doc. 48 at ¶ 2. BIT operates South Dakota Public Broadcasting, wires computer programs for agencies, maintains communication infrastructure, and provides support to computer users throughout state government. Id.

The support services component of BIT provides support to end users through the use of teams of technicians called "computer support teams." Doc. 48 at ¶ 3. Each team is responsible for the employees within a particular group of buildings or an area of the state. Id. There are three support teams for state employees located in Pierre and three that are responsible for the rest of the state. Id. Lors is an insulin-dependent diabetic and has been since 1977. Doc. 48 at ¶ 5. On November 9, 2004, Lors was transferred from working as a computer support team leader to a position as a computer support analyst. Doc. 15 at ¶ 6; Doc. 48 at ¶ 6; Doc. 47 at ¶ 6. To Lors, this unilateral transfer to being a computer support analyst was a demotion.[1] Doc. 48 at ¶ 6; Doc. 47 at ¶ 6. At the time Lors was terminated from BIT on April 23, 2009, he was working as a computer support analyst. Doc. 48 at ¶ 4.

After Lors was demoted to computer support analyst, he sued Defendants Dean, Dufour, Stahl, Doll, the State of South Dakota, and then-Attorney General Larry Long in the United States District Court for the District of South Dakota. Doc. 48 at ¶ 7; Lors v. Dean ("Lors I"), Civ. 07-3017. In Lors I, Lors alleged, among other things, that his transfer or demotion was in violation of the Americans with Disabilities Act ("ADA") and that he was not satisfactorily accommodated when

---

[1] Defendants maintain that Lors's transfer was not a demotion because there is no separate classification for a team leader computer analyst, the same pay scale applies, and the move was a lateral transfer under the Administrative Rules of South Dakota 55:01:01:01(20). Doc. 18 at 1-2. Viewing the facts in the light most favorable to the non-movant Lors, this Court considers the transfer to be a demotion, as Lors considered it to be, without deciding the issue of how in fact the transfer should be characterized. The reasons given for the transfer included Lors's ostensible troubles getting along with others and not being a team player. Lors v. Dean, Civ. 07-3017; Doc. 63 at 4.

he expressed concerns to management about the circumstances of a work assignment making it difficult to control his diabetes. Doc. 48 at ¶ 7; see Lors I, Civ. 07-3017.

In Lors I, the district court granted summary judgment for the Defendants. Lors I, No. Civ. 07-3017, 2008 WL 5233105 (D.S.D. Dec. 15, 2008). Lors appealed to the United States Court of Appeals for the Eighth Circuit, which affirmed the grant of summary judgment. Lors v. Dean, 595 F.3d 831 (8th Cir. 2010). In affirming the grant of summary judgment, the Eighth Circuit noted that "[t]here was no evidence demonstrating a genuine issue of material fact over whether Lors was removed from the position of team leader because of his diabetes." Lors, 595 F.3d at 834. In Lors I, the defendants had come forward with an explanation that Lors's demotion was due to Lors having sent emails that he should not have sent, struggling to get along with other workers in BIT, and having difficulty following the chain of command and being cooperative. Id. The Eighth Circuit concluded that "even if Lors was able to meet the burden of establishing his prima facie case, the [defendants] have offered a legitimate, non-discriminatory reason for their actions, and Lors has failed to offer evidence showing a genuine issue of material fact regarding whether this is a pretext." Id.

In fairness, Lors had received positive comments with regard to his job performance throughout the history of his employment with BIT. Doc. 48 at ¶ 9. The performance reviews suggest that while at times very opinionated and assertive, Lors was very detail-oriented and knowledgeable. Doc. 47 at 6-13.

After his demotion, Lors was assigned to a team led by Dan Houck. Lors remained under the supervision of Jim Dean, but was instructed to follow team leader Houck's directives. Doc. 48 at ¶ 6. Issues developed between Houck and Lors. On September 3, 2008, BIT issued a formal reprimand to Lors for failing to follow a directive from team leader Houck and for being disrespectful to his team leader in his communications concerning the directive. Lors responded in writing to the formal reprimand referring to Houck's emails as "absurd and taunting" and expressing the belief that Houck had failed in his duties on this occasion and previously. Doc. 48 at ¶ 10; Doc. 15-4 at 2. Thereafter, Houck sent an email to his supervisors expressing mistrust of Lors, forecasting that Lors would claim a hostile work environment, and suggesting that some preemptive claim be made against Lors for creating a hostile work environment. Doc. 48 at ¶ 10.

In January of 2009, the State of South Dakota adopted a policy prohibiting its employees from using recording devices unless authorized as a part of their job duties. Doc. 48 at ¶ 27. Before

3

January of 2009, there existed no such formal policy. Doc. 47 at ¶ 11. Lors had secretly recorded conversations with several of his co-workers in 2004 and 2005, including defendants Dufour and Dean and co-employee Houck. Id. at ¶ 10. In response to discovery requests in Lors I, Lors produced the audio recordings, and in 2007, some of Lors's co-employees became aware that Lors had secretly recorded conversations with them. Id. at ¶¶ 17-19. The revelation of Lors's secret recording of past conversations caused distrust of Lors among some at BIT. Id. at ¶ 20.

On February 24, 2009, Lors and Defendant Dufour, the support services manager for BIT, had a meeting at Lors's request to discuss, among other things, an incident where Lors indicated to a co-worker that he was going to test a computer code written from a "secret location." Doc. 48 at ¶ 11. Lors's "secret location" from which he had written a computer code merely was a separate area of Lors's H-drive, but the reference to a "secret location" had prompted BIT to have Lors's computer examined. Id. During the course of their meeting to discuss the "secret location," Dufour asked Lors if he was recording the conversation. Lors responded, "do you mind if I record?" Dufour replied, "yes, I do mind if you record." Lors then continued with the conversation, but did not answer whether he was recording the conversation. Dufour stopped the conversation and asked again if Lors was recording the conversation; again Lors did not respond. Doc. 15 at ¶ 11; Doc. 48 at ¶ 11. Dufour then informed Lors that he was being insubordinate and that the meeting had ended. Id.

For the alleged insubordination in the February 24, 2009 meeting with Dufour, Lors received a one-day suspension without pay. Doc. 48 at ¶ 12. During the course of this litigation this Court issued an order compelling Lors to produce any recordings made of Lors's co-workers. Doc. 38. Lors produced recordings of conversations with Dean, Dufour, and Houck from February 18, 2009, but no recordings from February 24, 2009. Doc. 40 at 2. Lors maintains that he was not aware that the State of South Dakota had initiated a policy in January of 2009 that prohibited such recordings without permission of all involved. Doc. 48 at ¶ 12.

On March 17, 2009, Lors was placed on a thirty-day work improvement plan ("WIP"), with the stated reasons being that (1) he refused to give a direct answer when asked if he was recording conversations; (2) he continued to refer to supervisors and managers in disrespectful terms and did not respect their authority; (3) he would not accept answers or decisions made by management and challenged these decisions; (4) Lors's relationship with his co-workers continued to be strained; and (5) Lors's managers and co-workers did not trust him. The WIP set out several goals for Lors to achieve during the 30-day period, including that Lors was to answer directly when asked if he were

4

recording conversations, was to refrain from making threatening remarks to co-workers, and was to treat co-workers, managers, and supervisors professionally and with respect. Doc. 15 at ¶ 13; Doc 15-4 at 3; Doc. 48 at ¶ 13. Lors felt that he was being treated unfairly and that others in BIT, including team leader Houck, had been and were openly sarcastic, unprofessional, and rude towards Lors. Doc. 48 at ¶ 13.

On April 20, 2009, BIT issued a Notice of Intent to Terminate, ostensibly because Lors failed to meet the goals established by the WIP. Doc. 15 at ¶ 14; Doc. 48 at ¶ 14. Lors believes that it was a pretense to terminate him for recording of conversations and for behavior that not only Lors, but others like Houck were openly engaging in as well. Lors believes that his termination was in retaliation for his filing and pursuit of claims in Lors I. Lors's termination became final on April 23, 2009. Doc. 48 at ¶ 14.

Lors then filed a grievance with the South Dakota Career Service Commission ("CSC") challenging his termination. Doc. 48 at ¶ 15. In his opening statement before the CSC, Lors, acting pro se, maintained that his filing of the ADA claim in federal court "played a part in his termination." Id. at ¶ 16. Lors, however, stated that he was not attempting to settle that issue before the CSC and that because of the ongoing litigation in Lors I at that time, he felt uncomfortable addressing those issues in full. Id. Lors cross-examined some of his co-workers and supervisors who were called as witnesses before the CSC. Id. at ¶ 17. Before the CSC, Jim Dean, Lors's supervisor, was asked about the reasons for the disciplinary action against Lors and whether it was related to Lors's filing of a federal case or Lors's diabetes. Dean denied that the disciplinary action was so related, but mentioned that he had developed a distrust of Lors because of the recordings that Lors had made of conversations and his use of those recordings in his ADA suit. Id. at ¶ 18. The CSC upheld Lors's termination by BIT finding there to be cause for BIT to have disciplined Lors and terminated Lors's employment. Doc. 15-3 at 6. The CSC found no credible evidence to support Lors's assertion that any disciplinary action of BIT was in retaliation for the filing or continuation of the ADA case or the result of Lors's diabetes. Id. at ¶ 30. Lors appealed the CSC decision to the Sixth Judicial Circuit Court of the State of South Dakota, but that court affirmed the CSC decision. Doc. 48 at ¶ 23; Doc. 15-4. In affirming the decision, the state circuit court reviewed CSC's findings under a clearly erroneous standard and determined that no substantial right of Lors had been prejudiced. Doc. 15-4. Lors did not appeal to the Supreme Court of South Dakota, and the time for doing so has passed.

On May 5, 2009, Lors applied for unemployment benefits. Doc. 48 at ¶ 24; Doc. 15 at ¶ 24. After his claim was denied, Lors appealed to the South Dakota Department of Labor Unemployment Insurance Appeals Division. Doc. 48 at ¶ 24. The Unemployment Insurance Appeals Division determined that Lors was ineligible for unemployment benefits because he had been terminated for misconduct. Id. Lors did not appeal that decision to the circuit court. Id.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). On summary judgment, courts view "'the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.'" E.E.O.C. v. CRST Van Expedited, Inc., 679 F. 3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

## III. Discussion

### A. Issue Preclusion

Federal courts give "full faith and credit" to state court rulings under 28 U.S.C. § 1738. Federal courts, however, are only required to give preclusive effect to state court decisions as would the state from which the ruling comes. 28 U.S.C. § 1738. The Supreme Court of South Dakota applies the doctrine of issue preclusion or collateral estoppel when an issue has been "actually and directly in issue in a former action and was judicially passed upon and determined by a domestic court of competent jurisdiction." Am. Family Ins. Grp. v. Robnik, 2010 S.D. 69, ¶ 18, 787 N.W.2d 768, 775 (citations omitted). The Supreme Court of South Dakota draws from federal law for its principles of issue preclusion. See, e.g., Black Hills Jewelry Mfg. Co., 336 N.W.2d 153, 157 (S.D. 1983) (approving Hanson v. Hunt Oil Co., 505 F.2d 1237 (8th Cir. 1974)). Because this case rests on federal question jurisdiction, this Court is free to follow the federal conceptions as to the effect of issue preclusion. Heiser v. Woodruff, 327 U.S. 726, 733 (1946) ("It has been held in

6

non-diversity cases since Erie v. Tompkins, that the federal courts will apply their own rule of res judicata."); 47 Am. Jur. 2d Judgments § 471.

Under precedent from the United States Court of Appeals for the Eighth Circuit, "the doctrine of issue preclusion, which was formerly known as collateral estoppel, provides that 'when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.'" Anderson v. Genuine Parts Co., Inc., 128 F.3d. 1267, 1272 (8th Cir. 1997) (quoting United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996)). Issue preclusion is to apply to "bar relitigation of a single *ultimate issue of fact* (not an entire cause of action) when that issue of fact has actually been determined by a valid judgment in a prior proceeding between the same parties." Lundquist v. Rice Mem'l Hosp., 121 Fed. App'x. 664, 668 (8th Cir. 2005). Recently, the Eighth Circuit set forth the elements of issue preclusion as follows:

> In the Eighth Circuit, issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Ginters v. Frazier, 614 F.3d 822, 826 (8th Cir. 2010) (citations and quotations omitted). The Defendants assert that all five elements for issue preclusion are met with regard to the CSC decision and the Unemployment Insurance Appeals Division. Lors disagrees.

The first element of issue preclusion plainly is met. Lors was a party to both the CSC proceeding and the Unemployment Insurance litigation.

The second element of issue preclusion—the issue sought to be precluded must be the same as the issue involved in the prior action—deserves greater attention. There are two rulings to which issue preclusion arguably may apply. First, the Defendants seek to preclude Lors from a claim that his discharge from employment violated Title VII of the Civil Rights Act of 1964 and that his termination allegedly was due to Lors having filed and maintained his ADA case. The CSC indeed made findings of fact that included "[t]here is no credible evidence that any of the disciplinary actions taken by BIT were a result of or related to the commencement or continuation by Lors of the ADA case." Doc. 15-3 at ¶ 30. The interrelation of the ADA claim to Lors's termination was

7

"involved in the prior action" to the extent that Lors referenced it and there was brief testimony of certain witnesses regarding it. Doc. 48 at ¶¶ 15-16; Doc. 56. Lors's argument that he expressed uncertainty to the CSC as to how to proceed given the ADA case and said that he was uncomfortable addressing the issue in full relates more to the third and fifth elements. Second, issue preclusion may extend to findings of the CSC and the Unemployment Insurance Appeals Division that BIT had cause to discipline and terminate Lors based on grounds completely unrelated to his ADA claim,[2] which certainly is an issue "involved in the prior action[s]." Both the CSC and the Unemployment Insurance Appeals Division expressly so found. Doc. 48 at ¶ 24; Doc. 15-3 at 6.

The third element for issue preclusion—the issue sought to be precluded must have been actually litigated in the prior action—applies without question to the conclusion of the CSC and the Unemployment Insurance Appeals Division that BIT had cause to discipline and terminate Lors, apart from anything relating to the ADA claim. As to the CSC finding that there was no credible evidence that Lors's discipline was related to his ADA claim, it is somewhat unclear whether the ADA claim and its influence on Lors's discipline was being litigated before the CSC. No doubt, the CSC made a finding of fact on the subject and a couple of witnesses testified that the ADA claim did not influence the ultimate reason for Lors's termination. However, the comments of Lors, both referencing the ADA claim and expressing discomfort in addressing and litigating it before the CSC, cast doubt on whether the interplay between the termination and the ADA claim was "actually litigated in the prior action." However, it was clear that the existence of cause separate and apart from the ADA filing was "actually litigated" both before the CSC and the Unemployment Insurance Appeals Division.

The fourth element of issue preclusion is met here. The issue sought to be precluded was in "a valid and final judgment." Both the CSC ruling, as affirmed by the circuit court, and the Unemployment Insurance Appeals Division rulings are valid and final. Issue preclusion stems from administrative determinations as long as "the proceeding resulting in the determination entailed the

---

[2] The existence of grounds independent of Lors's ADA litigation for his discipline and termination impacts whether Lors can satisfy his burden under the McDonnell-Douglas test or can rebut the legitimate non-retaliatory explanation for the adverse action proffered by the Defendants. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Mitchell v. Iowa Prot. & Advocacy Servs., 325 F.3d 1011, 1013 (8th Cir. 2003).

essential elements of adjudication," which happened before the Unemployment Insurance Appeals Division. 47 Am. Jur. 2d Judgments § 518.

The fifth element of issue preclusion is that the determination in the prior action must have been essential to the prior judgment. Here, the determination that there was cause for disciplinary action and termination of Lors was essential to the prior judgment of the CSC as affirmed by the circuit court and to the Unemployment Insurance Appeals Division's denial of unemployment benefits. Thus, there is issue preclusion on the subject that there was cause for disciplinary action and termination of Lors, apart from Lors's ADA case. This Court, on the record as it exists at this time, cannot conclude that the CSC determination that Lors's ADA claim had nothing to do with his termination and should be given preclusive effect. Viewing the facts in the light most favorable to non-movant Lors in considering the summary judgment motion, this Court concludes that there is at least a question of fact as to whether the interplay, if any, between the ADA claim and the ultimate termination was actually litigated by Lors and was essential to the determination of whether there was cause apart from Lors's ADA claim for the discipline and termination of Lors's employment.

### B. McDonnell-Douglas Analysis

Lors and the Defendants agree that evaluation of Lors's claim must take place under the framework set forth in McDonnell-Douglas, 411 U.S. 792. Lors may establish his claim of unconstitutional discrimination under Title VII using either direct or circumstantial evidence. Id. at 802-05. Notwithstanding his argument to the contrary, Lors did not present direct evidence of discrimination, so to survive the Defendants' Motion for Summary Judgment, Lors must establish discrimination through the McDonnell-Douglas burden-shifting analysis. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011); Davis v. Jefferson Hospital Ass'n, No. 10-3858, 2012 WL 2849265, at *3 (8th Cir. July 12, 2012).

Under the McDonnell-Douglas framework, a plaintiff must first establish a prima facie case of retaliation. A presumption of discrimination can be shown by a minimal evidentiary showing that Lors was treated less favorably than a similarly situated employee, not a member of a protected class. Twiggs v. Selig, 679 F.3d 990, 993 (8th Cir. 2012). The burden then shifts to Defendants to provide a "non-discriminatory, legitimate justification for [their] conduct, which rebuts the employee's prima facie case." Id. (quoting Rodgers, 417 F.3d at 850). Once the Defendants provide

this justification, the burden shifts to Lors to show by a preponderance of the evidence that Defendants' justification is mere pretext. Id.

To establish a prima facie case of retaliation, Lors must establish that he was engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011); Davis, 2012 WL 2849265 at *6. Lors was engaged in protected conduct in pursuing a claim under the ADA. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). Lors suffered an adverse employment action through the disciplinary action and ultimate termination. Wierman, 638 F.3d at 999 ("Unquestionably, termination is an adverse employment action."). Lors has not come forward with direct evidence that the adverse action was casually linked to the protected conduct. Lors points to the timing of his termination being within two years after he commenced the ADA case and during the pendency of his appeal of a grant of summary judgment. However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel, 169 F.3d at 1136; Feltmann v. Sieben, 108 F.3d 970, 977 (8th Cir. 1997) (holding Title VII retaliatory discharge claim not established when plaintiff fired six months after complaint); Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992) (holding that standing alone, termination six months after reprimand for filing a complaint is insufficient evidence); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) (holding four months between charge and adverse action produces a weak inference of retaliation).

The evidence Lors has produced does show some cattiness on the part of his team leader and an atmosphere of mistrust at BIT in the aftermath of the revelation of Lors's recordings of certain conversations with his co-workers without their prior knowledge or consent. Lors, contrary to his argument, has no direct evidence of discrimination. Even if Lors had some evidence of a causal link, such that this Court could conclude he had a prima facie case, Lors's claims do not survive under the burden-shifting portion of the McDonnell-Douglas test.

Under McDonnell-Douglas, an employer can rebut a presumption of retaliation by articulating a legitimate, non-retaliatory reason for the adverse employment action. Mitchell, 325 F.3d at 1013. The Defendants have done so, and indeed the CSC, the circuit court affirmance of the CSC ruling, and the Unemployment Insurance Appeals Division rulings all have issue preclusion effect that there existed legitimate non-discriminatory grounds for discipline and termination of Lors.

10

Once Defendants make this showing, Lors must then identify evidence sufficient to create a genuine issue of material fact whether Defendants' proffered explanation is merely a pretext for unlawful retaliation. Wierman, 638 F.3d at 999. Lors does not so much contest the basis for the Work Improvement Plan—his refusal to give a direct answer when he was asked if he was recording conversations, disrespect towards supervisors and managers, not accepting decisions made by management and challenging those decisions, strained relationships with co-workers, and a lack of trust with co-workers. Doc. 48 at ¶ 13; Doc. 15-4. Rather, Lors counters that others at BIT are to blame for problems in the work environment and that he did not know of the new policy in January of 2009 forbidding secretive recording of conversations as he was doing. Lors's evidence and explanations are not sufficient as a matter of law to create a genuine issue of material fact as to whether the employer's proffered reasons were pretextual or create an issue of fact on that subject, especially when the findings of two state tribunals have found preclusive effect that there was cause for BIT to discipline Lors and terminate Lors's employment apart from the ADA claim.

## IV. Conclusion

Based on the foregoing and for good cause, it is hereby

ORDERED that Defendants' Motion for Summary Judgment (Doc. 13) is granted and that summary judgment enter under Rule 56 of the Federal Rules of Civil Procedure on Lors's Complaint.

Dated July _20_, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

11